## Summerhill Borough, Appellant, *v.* Cambria County Water Supply Company.

*Equity—Findings of fact—Evidence—Contract—Water companies—Boroughs.*

On a bill in equity by a borough against a water company to restrain the defendant from cutting off water from fire plugs where the plaintiff avers a verbal agreement on the part of the water company to supply the plugs in consideration of a grant of franchises to use the streets, and this agreement is denied by the answer, and is not sustained by any proof of a contract between the responsible officers of the borough

and the company, and there is no evidence on the subject, except general conversations between employees of the water company and a justice of the peace and councilmen of the borough in their individual capacity, the bill is properly dismissed upon the findings of the court below that no contract existed.

Argued May 1, 1911. Appeal, No. 66, April T., 1911, by plaintiff, from decree of C. P. Cambria Co., March T., 1905, No. 4, dismissing bill in equity in case of Summerhill Borough v. Cambria County Water Supply Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Bill in equity for an injunction. Before O'CONNOR, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree dismissing the bill.

*William Davis*, with him *Harvey Roland*, for appellant.

*P. J. Little*, for appellee.

OPINION BY PORTER, J., October 9, 1911:

The plaintiff borough was incorporated under the general borough act of April 3, 1851, P. L. 320, and its supplements. The Cambria County Water Supply Co., the defendant, was duly incorporated on February 16, 1900, under the Act of April 29, 1874, P. L. 73, and its supplements, and is authorized to supply water to the public in said borough. The plaintiff filed this bill to restrain the defendant company from cutting off the supply of water to ten fire plugs and prayed for a mandatory injunction requiring the defendant company to continue to supply water to said fire plugs of the borough free of charge for the water so furnished. The plaintiff averred in the bill that the defendant company had entered into a "verbal agreement" that it would furnish to the borough ten fire plugs and supply the same with water, "free of cost or

charge, for either the plugs or the water service therefor, as a consideration for the grant by said borough of the right or franchise to enter and occupy its streets, lanes and alleys." The bill further averred that the plaintiff borough, relying upon said verbal agreement, did grant to the defendant company the right to enter and occupy the streets, lanes and alleys of the borough with water pipes and mains. The defendant company filed an answer absolutely denying that it had entered into any verbal agreement to furnish the borough with fire plugs and supply the same with water free of cost or charge, and denying that the defendant company was to give any consideration for the grant of the right by the borough to enter and occupy the streets, under its franchise. The court below after hearing the testimony found as facts that no agreement had been entered into between the borough and the water company under the terms of which the latter undertook to furnish to the borough the fire plugs in question and supply them with water free of cost, as alleged in the bill; that no person duly authorized to act for the borough in that behalf had entered into such a contract for the borough; and that no person authorized to represent the defendant company had made such an agreement on behalf of the company. The court, having so found the facts, dismissed the bill at the cost of the plaintiff, and the borough now appeals.

The statutes under which the defendant company was incorporated do not require the company to supply the fire plugs of this borough with water free of charge. There is in this case no necessity for inquiring whether the defendant company had the right to enter upon the streets of the borough and lay its pipes without first obtaining the consent of the borough authorities, for the borough did duly pass an ordinance expressly authorizing the entry of the water company, and regulating the manner in which the pipes should be laid. The borough did not in that ordinance attempt to impose any obligation upon the water company to furnish fire plugs and supply them

with water free of cost. The only provision of the ordinance referring to fire plugs is found in its second section, which authorized the water company: "to lay smaller pipes connecting the main piping with the owners of property and residences to be supplied with water and with such fire plugs as may by contract with the borough authorities be provided for the purpose of extinguishing fires." This clearly indicates that no agreement as to fire plugs had been arrived at between the borough and the water company at the time this ordinance was approved; that matter was to be left open for a future contract between the parties. The borough did not attempt to base the claim which it asserts upon the provisions of the charter of the defendant company, nor upon the ordinance of the borough, passed to regulate the manner in which the pipes should be laid in the streets. The only assertion of the bill is that the defendant company had made a verbal agreement to furnish the fire plugs and supply them with water. This averment being denied in the answer, the burden was upon the plaintiff to establish by evidence that the defendant company or some person duly authorized to act for it had made the verbal agreement upon which the borough attempted to found its right. The appellant sought to discharge this burden by calling a number of witnesses who testified as to what had been said by a number of employees of the defendant company. There was not a scintilla of evidence tending to establish that these employees had any authority to speak for the company with regard to a contract of this character. Even if these employees had been possessed of authority to speak for the defendant company, the persons with whom they were talking were not duly authorized to make any contract for the borough. The village justice of the peace was not an officer of the borough, authorized to bind it by any contract. The borough council did not delegate to any committee authority to negotiate a contract with the defendant company concerning the matter in question. There was some evidence

that some of the members of council, not authorized to represent the council as a body, did have conversations with some of the inferior employees of the water company, but contracts between the borough and the water company must have some better foundation than mere casual conversations, upon the street or in the country store, of individual councilmen with an employee of the defendant, not authorized to represent the company. The employees of the defendant company mentioned in the testimony resided in the borough and they no doubt discussed with the justice of the peace and other neighbors the advantages and disadvantages of having a water service installed upon the city streets. The event was probably one very generally discussed by all the residents of the borough, upon the street corners, in the barber shop, the office of the justice of the peace and other places of public resort. These numerous conversations could not, in themselves, constitute a contract, for the reason that none of the parties were authorized to represent either the borough or the water company. The findings of fact by the learned judge of the court below were not only warranted by the evidence, but they were the only findings which could under the evidence have been sustained. There was no contract and the borough was not entitled to the relief prayed for.

The decree is affirmed and the appeal dismissed at cost of the appellant.